## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BRANDON MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-cv-441-SRW |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

### I.    Introduction

Plaintiff Brandon Mack commenced this action on June 21, 2019, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"). *See* Docs. 1, 12. Administrative Law Judge ("ALJ") Renita F. Barnett-Jefferson issued an adverse decision against plaintiff on his claim for SSI on August 15, 2018 ("fourth ALJ decision"). Docs.16-11 at 5-62, 16-12 at 2-8, R. 601-65. On April 18, 2019, the Appeals Council denied plaintiff's request for review of the fourth ALJ decision, and that decision became the final decision of the Commissioner. *See* Doc. 16-10 at 2-5, R. 591-94; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

a.    First ALJ Decision

Plaintiff's mother, Dorothy Mack, filed an application for SSI benefits on behalf of plaintiff on March 22, 2006. *See* Doc. 16-3 at 2, R. 86. Plaintiff was a minor at the time. *See id.* Plaintiff's application was denied at the administrative level on June 23, 2006. Doc. 16-4 at 2, R. 110. Plaintiff then requested (Doc. 16-4 at 9, R. 117) and received a hearing before ALJ Frank M. Klinger on August 6, 2008 (Doc. 16-3 at 6-19, R. 90-103). On May 26, 2009, the ALJ issued an unfavorable decision ("first ALJ decision"). On September 14, 2011, the Appeals Council remanded plaintiff's case back to an ALJ to obtain additional information about plaintiff's medical impairments to complete the administrative record and obtain evidence from a medical expert to clarify whether plaintiff's impairments meet, medically equal, or functionally equal Listing 112.05D in the Social Security Listing of Impairments. Doc. 16-3 at 22-23, R. 106-07. The Appeals Council also designated plaintiff's third claim, filed on December 21, 2010, as a duplicate, and instructed the ALJ to associate the claim files and issue a new decision on the associated claims. *See id.*

b.    Second ALJ Decision

During the pendency of plaintiff's appeal of the first ALJ decision, plaintiff's mother filed a second SSI claim on August 27, 2009. *See* Doc. 16-13 at 40, R. 780. Plaintiff's second claim was denied at the administrative level on March 8, 2010. *Id.* Plaintiff requested and received an administrative hearing. *Id.* Plaintiff appeared before ALJ Mary E. Helmer on September 20, 2010, who issued an unfavorable decision regarding plaintiff's claim on November 2, 2010 ("second ALJ decision"). Doc. 16-13 at 40-62, R. 780-802.

2

c.      Third ALJ Decision

On remand from the Appeals Council's 2011 order, Plaintiff received another hearing on December 6, 2012 before ALJ Frank M. Klinger, who issued an unfavorable decision regarding plaintiff's claim on April 15, 2013 (the "third ALJ decision"). Doc. 16-13 at 2-25, R. 742-765. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied plaintiff's request for reconsideration on July 9, 2014. Doc. 16-2 at 2-4; R.1-3. Plaintiff appealed the Commissioner's decision, resulting from the Appeals Council's denial of plaintiff's request for review, to the United States District Court for Middle District of Alabama. On March 30, 2016, United States Magistrate Judge Charles S. Coody reversed and remanded the Commissioner's decision for further consideration, strongly suggesting that the Commissioner refer plaintiff's case to a different ALJ, given the ALJ's "obvious antipathy towards faithful consideration of the evidence and his emphasis on stereotypical speculation[.]" *See* Doc. 16-14 at 2-15, R. 817-830. On June 29, 2016, the Appeals Council vacated the third ALJ decision, remanded the case for further review by a different ALJ, and instructed the ALJ to consolidate the electronic claim file with the SSI applications filed on August 27, 2009 and December 21, 2010. Doc. 16-14 at 20-23, R. 835-38. The Appeals Council noted that the third ALJ decision "effectively reopened the November 2, 2010 unfavorable decision" "by finding the claimant not disabled since March 22, 2006," and directed the ALJ to "address the evidence obtained with the[] subsequent claims, and issue a new decision on the consolidated claims[.]" *Id.* at 22-23, R. 837-38.

d.      Fourth ALJ Decision

3

The Fourth ALJ decision is the decision before the court in the instant case. On remand from the Appeals Council's 2016 order, plaintiff requested and received a hearing before ALJ Barnett-Jefferson on February 14, 2018. *See* Doc. 16-11 at 7, R. 603. ALJ Barnett-Jefferson issued an adverse decision on plaintiff's claim on August 15, 2018 (Docs.16-11 at 5-62, 16-12 at 2-8, R. 601-65) and the Appeals Council denied review of the ALJ's decision (Doc. 16-10 at 2-5, R. 591-94).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand the case for calculation and award of benefits. *See* Docs. 1 at 1-2; 12 at 15. This case is ripe for review pursuant to 42 U.S.C. §§ 405(f) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10. Based on review of the parties' submissions, the relevant law, and the record as a whole, the Commissioner's decision will be affirmed.

## Standard of Review

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must

affirm if the decision reached is supported by substantial evidence") (citations omitted).
The court will reverse the Commissioner's decision if it is convinced that the decision was
not supported by substantial evidence or that the proper legal standards were not applied.
*Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not
warranted merely because the court itself would have reached a result contrary to that of
the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A
reviewing court may not look only to those parts of the record which support the decision
of the ALJ, but instead must view the record in its entirety and take account of evidence
which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179,
1180 (11th Cir. 1986).

> [The court must] … scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] … factual findings… . No similar
> presumption of validity attaches to the [Commissioner's] … legal
> conclusions, including determination of the proper standards to be applied in
> evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

Because plaintiff's claim was filed before he reached the age of 18, and his claimed
period of disability extends until after he turned 18, two different standards of disability
apply: a childhood standard of disability, and an adult standard of disability. *See* 20 C.F.R.
§ 416.924(f).

    a.    Childhood Standard of Disability

To quality for disability benefits and establish his or her entitlement for a period of
disability, an individual under the age of 18 must show that he or she has:

> a medically determinable physical or mental impairment, which results in
> marked and severe functional limitations, and which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 1382c(a)(3)(C)(i).[2] To make this determination, the Commissioner employs a three-step, sequential evaluation process. *See* 20 C.F.R. § 416.924(a)-(d).

(1) Is the claimant engaged in substantial gainful activity?
(2) Does the claimant have a physical or mental impairment which, whether individually or in combination of one or more other impairments, is a severe impairment?
(3) Does the impairment meet the durational requirement and meet, medically equal, or functionally equal a severe impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [The Listing of Impairments]?

*See Parks v. Comm'r of Soc. Sec.*, 783 F.3d 847, 850-51 (11th Cir. 2015).

At each step, the claimant bears the burden of proof. *See Gaston v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 23256 at *2 (M.D. Fla.) ("As in all Social Security disability cases, a claimant bears the burden of proving he is disabled within the meaning of the Social Security Act. This burden of proof on the claimant also exists for childhood SSI disability claims."). The Commissioner must assess the claimant's functioning in terms of six factors: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In making such an assessment, the Commissioner looks at "how appropriately, effectively, and independently" a claimant performs his or her activities "compared to the performance of other children [of the same] age who do not have impairments." *Id.*

---

[2] A "marked and severe" functional limitation is defined as a "level of severity that meets, medically equals, or functionally equals the listings." 20 C.F.R. §§ 416.902(h); 416.924(d); 416.926a(a).

b.      Adult Standard of Disability

To qualify for disability benefits and establish his or her entitlement for a period of

disability, an individual who has reached the age of 18 must be unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-

step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

> (1) Is the person presently engaged in any substantial gainful activity?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of
> Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability. A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264 n.8 (11th Cir. 2019).

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*,

357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272,

1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability

once he or she has carried the burden of proof from step one through step four. At step five,

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id*. at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, restriction to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## II.    Administrative Proceedings

Plaintiff was six years old at the time that his mother initially filed an SSI claim on March 22, 2006. He turned 18 on April 22, 2017, and was 19 at the time of the fourth ALJ decision. *See* Doc. 16-11 at 11, R. 607. Plaintiff is a resident of Montgomery, Alabama, and lives with his mother and brother. *See* Doc. 16-12 at 23, R. 680. Plaintiff completed the ninth grade. *See id.* at 24, R. 681.

8

The ALJ applied the three-step childhood standard of disability to the period before plaintiff turned 18, and applied the five-step standard for the period after plaintiff turned 18.

Applying the childhood standard, the ALJ found that plaintiff had "not engaged in substantial gainful activity" since the application date. Doc. 16-11 at 11, R. 607. At step two, the ALJ determined that before the age of 18, plaintiff had the severe impairments of sensorineural hearing loss in the right ear, cognitive deficits with low IQ scores, depressive disorder/mood disorder, and attention deficit hyperactivity. *Id.* At step three, the ALJ determined that plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments[.]" *Id.* at 14, R. 610. The ALJ found that plaintiff had "no limitation" in the domain of moving about and manipulating objects; "less than marked limitation" in the domains of attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well being; and "marked limitation" in acquiring and using information. *See id.* at 47-56: R. 643-52. Accordingly, the ALJ determined that plaintiff "was not disabled prior to attaining age 18[.]" *Id.* at 56, R. 652.

Applying the adult standard of disability, the ALJ found that plaintiff had "not engaged in substantial gainful activity" since the application date. Doc. 16-11 at 11, R. 607. At step two, building on her findings in applying the childhood standard of disability, the ALJ found that plaintiff had "not developed any new impairment or impairments since attaining the age of 18," and had "continued to have a severe impairment or combination of impairments: sensorineural hearing loss, cognitive deficits with low IQ scores,

depressive disorder/mood disorder, and attention deficit hyperactivity disorder[.]" *Id.* at 56, R. 652. At step three, the ALJ found that "[s]ince attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment[.]" *Id.* at 59, R. 655. Next, the ALJ articulated plaintiff's RFC as follows:

> since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant would be limited to no work involving unprotected heights, hazardous, moving mechanical parts or the operation of a motor vehicle for commercial purposes. He should avoid noisy environments equal to that of traffic noise. He is limited to simple, routine and repetitive tasks, no production standards, such as assembly line work. But could perform goal-oriented work such as that of an office cleaner. There should be no requirement to operate a telephone to complete job tasks and he may need occasional reminders by supervisors, especially during the first 30 days of the job. He is limited to occasional interaction with supervisors, coworkers, and the public and occasional changes in a routine work setting.

*Id.* at 61, R. 661. At step four, the ALJ determined that plaintiff "has no past relevant work." Doc. 16-12 at 6, R. 663. At step five, based on plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that "[s]ince attaining the age of 18 . . . jobs have existed in significant numbers in the national economy that the claimant has been able to perform." *Id.* at 7, R. 664. Accordingly, the ALJ determined that plaintiff "has not been under a disability . . . from April 22, 2017, the day claimant attained age 18, through the date of this decision[.]" *Id.* at 8, R. 665.

### III.   Issues on Appeal

Plaintiff raises four separate issues on appeal—specifically, that (1) the ALJ erred by finding that plaintiff did not have an impairment or combination of impairments that met *per se* disabling medical listing 112.05 or by finding that plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of a

medical listing prior to the time plaintiff turned 18, (2) the ALJ erred by finding that plaintiff does not meet or equal medical listing 12.05 since he turned 18 years old, (3) the ALJ failed to determine plaintiff's RFC properly based on the medical evidence, and (4) the ALJ failed to evaluate the testimony from plaintiff and plaintiff's mother properly. *See* Doc. 12 at 3. The Commissioner argues that the ALJ's decision was supported by substantial evidence.

## IV.   Discussion

1.      Medical Listing 112.05

Plaintiff argues that the ALJ's determination regarding medical listing 112.05 improperly weighed testimony from non-examining psychologists—that is, Dr. McKeown, Dr. Garner, and Dr. Cohen—that was not part of the certified record,[4] that the ALJ failed to weigh the opinion of examining psychologist Dr. Clark properly, and that the ALJ's findings that plaintiff had "marked" limitations in acquiring and using information but "moderate" limitations in understanding, remembering, or applying information were inherently inconsistent. Doc. 12 at 4-7.

Listing 112.05 (Intellectual disorder)[5] can be satisfied by A or B:

A.      Satisfied by 1 and 2 (see 112.00H):

1.  Significantly subaverage general intellectual functioning evident in your cognitive ability to function at a level required to participate in standardized testing of intellectual functioning; and

---

[4] The testimony of Dr. McKeown was added to the administrative record as an addendum to the administrative transcript on January 21, 2020. Doc. 17.

[5] "The 2013 version of the Listing of Impairments replaced the term 'Mental Retardation' with 'Intellectual Disability.'" *T.R.C. ex rel. Boyd v. Comm'r Soc. Sec.*, 553 F. App'x 914, 918 n.2 (11th Cir. 2014).

     2.   Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess or age-appropriate dependence

B.       Satisfied by 1 and 2 (see 112.00H):

     1.   Significantly subaverage general intellectual functioning evidenced by a or b:
         a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
         b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
     2.   Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
         a.  Understand, remember, or apply information (see 112.00E1); or
         b.  Interact with others (see 112.00E2); or
         c.  Concentrate, persist, or maintain pace (See 112.00E3); or
         d.  Adapt or manage oneself (see 112.00E4).

20 C.F.R. pt. 404 subpt. P., app. 1 § 112.05.

The ALJ determined that plaintiff's cognitive impairment did not satisfy the requirements of listing 112.05(A) because he had the ability to participate in standardized testing of intellectual functioning, as demonstrated by multiple intelligence tests in the record. Doc. 16-11 at 16, R. 612. The ALJ also determined that plaintiff's cognitive impairment did not satisfy the requirements of listing 112.05(B) because, while plaintiff's full-scale IQ scores would meet the requirements of 112.05(B)(1)(a), the record did not indicate that plaintiff had any significant deficits in adaptive functioning—therefore, plaintiff could not meet the requirements of 112.05(B)(2). *See id.* at 16-17, R. 612-13.

Plaintiff argues that the ALJ failed to weigh properly the evidence of Dr. Clark, who made a finding that plaintiff had a marked limitation in interacting with others, understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions, and that plaintiff's ability to adapt to changes in a routine work setting was affected by his impairment. Doc. 16-9 at 72-73, R. 550-51. Dr. Clark's findings were made on March 19, 2012, as part of a medical source statement of ability to perform work-related activities for adults, when plaintiff was 12 years old. *See id.*; Doc. 16-11 at 34, R. 630. The court finds that the ALJ properly considered, discussed, and discounted Dr. Clark's opinion, noting that Dr. Clark "did not performed [sic] a comprehensive psychological evaluation or review the longitudinal evidence of record" but "completed a disability form that is used to determine adult functioning in the workplace." Doc. 16-11 at 34, 46, R. 630, 642.

The record evidence supports the conclusion that the plaintiff does not meet the listing. As noted above, to find that plaintiff met the requirement of 112.05(B)(2), the ALJ must have found extreme limitation of one, or marked limitation of two out of four areas of adaptive functioning. Based on numerous teacher questionnaires and plaintiff's educational record showing that plaintiff "had no more than an obvious problem" in his ability to acquire and use information, the ALJ found that plaintiff had a moderate limitation in understanding, remembering, or applying information. Doc. 16-11 at 18, R. 614. Based on teacher questionnaires, school records, and behavioral medicine treatment records showing improvement in aggression, hyperactivity, mood swings, and disruptive conduct after treatments with psychotropic medication, the ALJ found that plaintiff had

13

mild to moderate limitations in interacting with others. *Id.* Based on teacher questionnaires, consultative psychiatric exam records, psychiatric treatment records, testimony from plaintiff's mother, and intelligence test records measuring, among other things, working memory and processing speed, the ALJ found that plaintiff had moderate limitation in concentrating, persisting, and maintaining pace. *Id.* at 19, R. 615. Based on teacher questionnaires and consultative psychiatric exam records showing that plaintiff had age-appropriate self-help skills, personal hygiene, and good judgment regarding personal safety and dangerous circumstances despite some mild limitations in identifying and asserting emotional needs, using appropriate coping skills, or handling frustration or changes in his mood appropriately, the ALJ found that plaintiff had mild limitation in adapting and managing himself. *Id.* at 20: R. 616. The ALJ's determination was supported by substantial evidence.

2.      Medical Listing 12.05

Plaintiff argues that the ALJ's determination regarding medical listing 12.05 also improperly weighed non-record testimony and failed to weigh evidence from Dr. Clark properly, and that the ALJ failed to develop the record fully and fairly because she did not order new psychological testing despite a recommendation from Dr. Cohen—a non-examining psychologist—to do so. Doc. 12 at 9.

Listing 12.05 Intellectual disorder (See 12.00B4) can be satisfied by A or B:

A.      Satisfied by 1, 2, and 3 (see 12.00H):

1.  Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

    2. Significant deficits in adaptive functioning currently manifested by
your dependence upon others for personal needs (for example,
toileting, eating, dressing, or bathing); and

    3. The evidence about your current intellectual and adaptive functioning
and about the history of your disorder demonstrates or supports the
conclusion that the disorder began prior to your attainment of age 22.

B.    B. Satisfied by 1, 2, and 3 (see 12.00H):

    1. Significantly subaverage general intellectual functioning evidenced
by a or b:
        a. A full scale (or comparable) IQ score of 70 or below on an
individually administered standardized test of general intelligence;
or
        b. A full scale (or comparable) IQ score of 71-75 accompanied by a
verbal or performance IQ score (or comparable part score) of 70
or below on an individually administered standardized test of
general intelligence; and

    2. Significant deficits in adaptive functioning currently manifested by
extreme limitation of one, or marked limitation of two, of the
following areas of mental functioning:
        a. Understand, remember, or apply information (see 12.00E1); or
        b. Interact with others (see 12.00E2); or
        c. Concentrate, persist, or maintain pace (see 12.00E3); or
        d. Adapt or manage oneself (see 12.00E4); and

    3. The evidence about your current intellectual and adaptive functioning
and about the history of your disorder demonstrates or supports the
conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404 subpt. P., app. 1 § 12.05.

The ALJ determined that plaintiff's cognitive impairment did not satisfy the
requirements of listing 12.05(A) because he had the ability to participate in standardized
testing of intellectual functioning, as demonstrated by multiple intelligence tests in the
record. Doc. 16-11 at 61, R. 657. The ALJ also found that plaintiff's cognitive impairment
did not satisfy the requirements of listing 12.05(B) because, while plaintiff's full-scale IQ
scores would meet the requirements of 12.05(B)(1)(a), the record did not indicate that

15

plaintiff had any significant deficits in adaptive functioning—therefore, plaintiff could not meet the requirements of 12.05(B)(2). *See id.*

Plaintiff argues that the ALJ ignored Dr. Clark's finding that plaintiff has marked restrictions in interacting with others and adapting or managing himself, without explanation as to how Dr. Clark's opinion was considered, and that this constituted reversible error. Doc. 12 at 9. The regulations provide that the ALJ must consider all medical opinions in a claimant's case record together with other relevant evidence, 20 C.F.R. § 404.1527(b), and that "the ALJ must state with particularity the weight given to different medical opinions and there reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). However, reversal is only warranted if the ALJ "fails to state with at least some measure of clarity the grounds for his decision." *Winschel*, 631 F.3d at 1179; *see also Brito v. Comm'r of Soc. Sec.*, 687 F. App'x 801, 804 (11th Cir. 2017) (per curiam) (holding that "the ALJ did not reversibly err by failing to assign specific weight" to a medical opinion where the ALJ's discussion of the opinion was stated with "at least some measure of clarity" sufficient to review the grounds for his decision). As discussed above, the ALJ considered and weighed the opinion of Dr. Clark, stating that "Dr. Clark . . . did not perform[] a comprehensive psychological evaluation or review the longitudinal evidence of record. He completed a disability form that is used to determine adult functioning in the workplace. The claimant was only twelve years old when Dr. Clark saw him." Doc. 16-11 at 46, R. 642. Although the ALJ did not specifically reiterate this statement in evaluating plaintiff's impairments under listing 12.05, her prior explanation was stated with sufficient

clarity for this court to review the grounds for her decision. Multiple factors go into the ALJ's weighing of a medical opinion:

> [T]he Social Security regulations command that the ALJ consider (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization. Non-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence.

*Schink*, 935 F.3d at 1260 (citing *Sharfarz*, 825 F.2d at 280; 20 C.F.R. § 404.1527(c)). The ALJ noted that Dr. Clark performed a consultative psychological evaluation by administering the Weschler Intelligence Scale for Children-Fourth Edition and based his findings of marked limitation on behavioral observations and the IQ test. Doc. 16-11 at 34, R. 630. Dr. Clark's behavioral notes indicated that plaintiff "was casually dressed and well groomed . . . quiet and reserved yet cooperative . . . made poor eye contact during the testing session . . . was under-talkative, [and] [h]is affect was mildly constricted." Doc. 16-9 at 71, R. 548. However, the ALJ gave significant weight to the opinion of Dr. Cohen, who reviewed the longitudinal evidence of record and testified specifically as to plaintiff's limitations with respect to listing 12.05 as well as listing 112.05. *See* Doc. 16-12 at 53-62, R. 710-719. This was not error.

Plaintiff also argues that the ALJ failed to develop the record properly because she did not obtain new psychological testing as recommended by Dr. Cohen. *See* Docs. 12 at 10; Doc. 16-12 at 61, R. 718. However, "[i]n fulfilling his duty to conduct a full and fair inquiry, the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the

administrative law judge to render a decision." *Holladay v. Bowen*, 848 F.2d 1206, 12010 (11th Cir. 1988) (citing *Ford v. Sec'y Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981)[6]). A consultative examination was not necessary here.

The record evidence supports the conclusion that the plaintiff does not meet the listing. As noted above, to find that plaintiff met the requirement of 12.05(B)(2), the ALJ must have found extreme limitation in one, or marked limitation in two out of four areas of adaptive functioning. Based on numerous teacher questionnaires and plaintiff's educational record, which showed that plaintiff "had no more than an obvious problem" in his ability to acquire and use information, the ALJ found that plaintiff had a moderate limitation in understanding, remembering, or applying information. Doc. 16-11 at 62, R. 658. Based on teacher questionnaires, school records, and behavioral medicine treatment records showing improvement of aggression, hyperactivity, mood swings, and disruptive conduct after treatments with psychotropic medication, the ALJ found that plaintiff had mild to moderate limitation in interacting with others. Doc. 16-12 at 2, R. 659. Based on teacher questionnaires, consultative psychiatric exam records, psychiatric treatment records, testimony from plaintiff's mother, and intelligence test records measuring, among other things, working memory and processing speed, the ALJ found that plaintiff had moderate limitation in concentrating, persisting, and maintaining pace. *Id.* at 3, R. 660. Based on teacher questionnaires and consultative psychiatric exam records showing that plaintiff had age-appropriate self-help skills, personal hygiene, and good judgment

---

[6] Under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court is bound by cases decided by the former Fifth Circuit before October 1, 1981.

regarding personal safety and dangerous circumstances despite some mild limitations in identifying and asserting emotional needs, using appropriate coping skills, or handling frustration or changes in his mood appropriately, the ALJ found that plaintiff had mild limitation in adapting and managing himself. *Id.* at 3-4: R. 660-61. The ALJ's determination was supported by substantial evidence.

3.     Residual Functional Capacity Determination

Plaintiff argues that the ALJ's RFC determination lacks substantial medical evidence because the record contains no psychological testing of plaintiff after he turned 18, despite the ALJ's giving "significant weight" to the testimony of Dr. Cohen, who said that plaintiff has greater mental limitations than those found by the ALJ. Doc. 12 at 11.

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946(c). Such "assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546). The ALJ, not the physician, is charged with assessing a claimant's RFC at the administrative level. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); *see also Castle v. Colvin*, 557 F. App'x 849, 853–854 (11th Cir. 2014) (finding that ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [the plaintiff's] RFC"). The determination of a claimant's RFC is an administrative assessment, not a medical one, and the final responsibility for assessing a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3), 416.946(a); SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996); *Castle*, 557 F. App'x at 853. Although an ALJ may not make medical findings, *see Marbury v. Sullivan*, 957 F.2d

19

837, 840 (11th Cir. 1992), it is the ALJ's responsibility to resolve conflicting medical opinions and evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). The ALJ, "as the factfinder, does not need an opinion from a treating or examining doctor concerning a claimant's functional limitation[s] in order to make a finding regarding a claimant's RFC." *Williams v. Astrue*, 2008 U.S. Dist. LEXIS 12010, at *15 (M.D. Fla. Feb. 18, 2009). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). It is not this court's role to reweigh the evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [the plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (internal quotations and footnotes omitted).

In the instant case, the ALJ considered the testimony of plaintiff and plaintiff's mother—as discussed in the following section—as well as the entire record, consisting of medical and educational records, including the prior administrative findings and history of plaintiff's case, and made an RFC determination after giving significant weight to the opinion of Dr. Cohen regarding plaintiff's ability to perform work related activities. The ALJ was not obligated to make findings identical to those in Dr. Cohen's opinion, but she accounted for Dr. Cohen's opinion in formulating plaintiff's RFC and provided a sufficient

rationale noting copious record evidence—including psychological and psychiatric evaluations, plaintiff's medical treatment records, teacher questionnaires, academic records, expert testimony, and the testimony of plaintiff and plaintiff's mother—to support her RFC determination. The ALJ's RFC determination is supported by substantial evidence.

4.      Testimony by Plaintiff and Plaintiff's Mother

Plaintiff argues that the ALJ failed to articulate the factors she considered in her evaluation of the testimony given by plaintiff and plaintiff's mother, and failed to provide explicit and adequate reasons for finding plaintiff's testimony unsupported. Doc. 12 at 13-15. Specifically, plaintiff argues that the ALJ failed to follow a two-step analysis of plaintiff's testimony. *Id.* at 12.

A claimant may establish disability through his or her own testimony of pain, or subjective conditions other than pain, by showing (1) evidence of an underlying medical condition, (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). While "[t]he claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability," an ALJ may decide not to credit such testimony. *See id.* An ALJ "must articulate explicit and adequate reasons" for discrediting a claimant's subjective testimony, and failure to do so requires that the testimony be accepted as true. *See id.* (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale v. Bowen*,

21

831 F.3d 1007, 1011, 1054 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Although the ALJ did not recite the steps of the "pain standard" in her decision, she did articulate explicit and adequate reasons not to credit plaintiff's and plaintiff's mother's testimony. The ALJ explained that although plaintiff testified that he was unable to work "because of outbursts, distracting other students, and getting upset/angry if he does not have his way," she was not persuaded by this testimony due to reports by mental health providers concluding that plaintiff's mother's reports of plaintiff's hyperactive, angry, and disruptive behavior exaggerated normal child patterns; reports by examining psychologists and psychiatrists finding plaintiff to be "pleasant, cooperative, polite, well-mannered, and sociable"; teacher questionnaires indicating that plaintiff respected adults, expressed anger appropriately, and followed rules despite some problems in verbal communications; and school records largely showing plaintiff's good conduct. Doc. 16-12 at 5, R. 662. The ALJ did not credit plaintiff's testimony that his lack of work history, driver's license, bank account, and attendance at church demonstrated a lack of age-appropriate functioning (1) because plaintiff admitted that he never made an effort to work or apply for a job; (2) because plaintiff's mother indicated that plaintiff was not interested in the Alabama Department of Rehabilitation's efforts to "find something for him to do"; (3) because plaintiff has had no personal income with which to make use of a bank account, and no car with which to take his driver's license test; and (4) because plaintiff has attended church and participated in its youth program in the past. *Id.* at 5-6, R. 662-63. Plaintiff's mother testified that plaintiff has attention and learning problems. The ALJ did not credit plaintiff's

mother's testimony despite finding that plaintiff "has some cognitive deficits as shown by low IQ scores and retention in kindergarten and eight grade," because plaintiff attended regular classes in school, generally scored in the average range in basic academic skills achievement tests, achieved numerous Bs and Cs in multiple school subjects—suggesting that he was capable of being an average student when he applied himself—has engaged in age-appropriate daily living activities, and has tended to his personal needs independently and helped his family with household chores and shopping, which indicates that plaintiff's adaptive functioning is higher than might be suggested by his IQ scores and grade retention. *Id.* at 5, R. 662. The ALJ articulated explicit and adequate reasons for not crediting the testimony of plaintiff and his mother, and the ALJ's findings are supported by substantial evidence.

### V.    Conclusion and Order

Upon consideration of the parties' briefs and the record, the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be affirmed by a separate judgment.

Done, on this the 9th day of September, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge